UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RONALD EUGENE ALLEN, Jr., | Case No. 3:21-cv-00141-ART-CSD |
| Petitioner, | ORDER |
| v. | |
| NETHANJAH BREITENBACH, *et al.*, | |
| Respondents. | |

I.    SUMMARY

This habeas corpus action is brought by Ronald Eugene Allen, Jr., an individual incarcerated at Nevada's Ely State Prison. Allen is represented by appointed counsel. The case is before the Court for resolution on the merits of Allen's claims. The Court denies Allen habeas corpus relief and denies him a certificate of appealability.

II.    BACKGROUND

In its ruling on Allen's direct appeal, the Nevada Court of Appeals described the factual background of the case as follows:

> Ronald Eugene Allen, Jr., appeals from a judgment of conviction, pursuant to a jury verdict, of invasion of the home, burglary while in possession of a deadly weapon, battery with use of a deadly weapon resulting in substantial bodily harm constituting domestic violence, and battery with intent to kill constituting domestic violence. Eighth Judicial District Court, Clark County; Jerry A Wiese, Judge.
>
> Allen was arrested for breaking into his mother's apartment and beating her with a baseball bat, seriously injuring her. The State charged him with invasion of the home, burglary while in possession of a deadly weapon, attempted murder with use of a deadly weapon, battery with use of a deadly weapon resulting in substantial bodily harm constituting domestic violence, and battery with intent to kill constituting domestic violence. At trial, the State presented testimony from the victim and the victim's daughter, who was on the phone with the victim when Allen broke into the home and began to

1

beat the victim. The State also presented other evidence including testimony from those who were involved with the investigation or the victim's healthcare. The Defense did not present any witnesses, arguing that the State did not prove its case because only the victim's testimony linked Allen to the crime. The jury found Allen guilty of all charges except an alternative charge of attempted murder with use of a deadly weapon.

\* \* \*

… [T]he victim testified that Allen broke into her home through a window and beat her. The victim's daughter testified that she overheard glass breaking, her mother exclaim "no, Ronnie, no," and her mother screaming. A police officer and a detective testified that the victim identified Allen as her attacker immediately following the crime. The State also presented a portion of the victim's 911 call, wherein she identified Allen as her attacker, as well as other evidence of the victim's injuries and the crime scene.

(ECF No. 33-23, pp. 2–4.)

Allen was sentenced, as a habitual criminal, to four concurrent sentences of life in prison with the possibility of parole after ten years. (*See* ECF Nos. 32-18, 32-20.) The judgment of conviction was entered on September 8, 2017. (ECF No. 32-20.)

Allen appealed, and the Nevada Court of Appeals affirmed the judgment of conviction on December 14, 2018. (ECF No. 33-23.)

Allen then filed a *pro se* petition for writ of habeas corpus in the state district court. (ECF No. 33-26.) He requested appointment of counsel and an evidentiary hearing, both of which were denied. (ECF Nos. 33-27, 33-29, 33-32, 34-3.) The state district court denied Allen's petition in a written order filed on May 6, 2020. (ECF No. 34-3.) Allen appealed, and the Nevada Court of Appeals affirmed on January 22, 2021. (ECF No. 34-10.)

Allen initiated this federal habeas corpus action by submitting a *pro se* petition for writ of habeas corpus for filing on March 29, 2021. (ECF Nos. 1, 4.) The Court appointed counsel for Allen (ECF No. 3), and, with counsel, Allen filed a first amended habeas petition on May 11, 2021 (ECF No. 11) and a second amended habeas petition on November 5, 2021 (ECF No. 22).

//

Allen's second amended petition—now his operative petition—asserts the following claims for habeas corpus relief:

> Ground 1: "Allen was convicted of all counts on insufficient evidence in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution."
>
> Ground 2: "The trial court deprived Allen of due process and a fair trial when it did not allow Allen to present a full defense in violation of the Fifth and Fourteenth Amendments to the United States Constitution."
>
> Ground 3: "Allen's attorney ineffectively failed to investigate potential defense witnesses in violation of the Sixth and Fourteenth Amendments to the United States Constitution."
>
> Ground 4: "Allen's appellate attorney ineffectively failed to challenge the jury instruction on implied malice in violation of the Sixth and Fourteenth Amendments to the United States Constitution."
>
> Ground 5: "Allen's appellate attorney ineffectively failed to challenge the notice requirement for a testifying witness in violation of the Sixth and Fourteenth Amendments to the United States Constitution."
>
> Ground 6: "The trial court deprived Allen of due process and a fair trial when it did not allow Allen to impeach the State's main witness with her prior bad acts in violation of the Fifth and Fourteenth Amendments to the United States Constitution."

(ECF No. 22.)

Respondents filed a motion to dismiss (ECF No. 28), arguing that Grounds 2 and 3 of Allen's second amended petition are unexhausted in state court, and that Ground 6 is procedurally defaulted. On March 9, 2023, the Court granted that motion in part, and dismissed Grounds 2 and 6 (ECF No. 45).

Respondents then filed an answer on May 8, 2023 (ECF No. 47), responding to Allen's remaining claims. Allen filed a reply on June 7, 2023 (ECF No. 48). Respondents filed a response to Allen's reply on June 30, 2023 (ECF No. 49).

III.    DISCUSSION

A.    Exhaustion and Procedural Default – Legal Principles

A federal court generally cannot grant a state prisoner's petition for writ of habeas corpus unless the petitioner has exhausted available state-court

3

remedies. 28 U.S.C. § 2254(b); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This means that a petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings. *See Casey v. Byford*, 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey*, 653 F.2d 374, 376 (9th Cir. 1981). The petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based. *See Bland v. California Dept. of Corrections*, 20 F.3d 1469, 1473 (9th Cir. 1994). The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented to the federal court in support of the claim. *See Nevius v. Sumner*, 852 F.2d 463, 470 (9th Cir. 1988). On the other hand, new allegations that do not "fundamentally alter the legal claim already considered by the state courts" do not render a claim unexhausted. *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986); *see also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir. 1994).

The Supreme Court has recognized that in some cases it may be appropriate for a federal court to anticipate a state-law procedural bar of a claim never presented in state court, and to treat such a claim as technically exhausted but subject to the procedural default doctrine. "An unexhausted claim will be procedurally defaulted, if state procedural rules would now bar the petitioner from bringing the claim in state court." *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)).

//

In this case, the parties appear to agree, and the Court concurs, that any claims not yet presented in state court would now be procedurally barred—for example, under Nev. Rev. Stat. § 34.726 (statute of limitations) and/or § 34.810 (successive petitions)—if Allen were to return to state court to exhaust those claims. (*See* ECF No. 43 at 6–7 (Allen concedes as much regarding Ground 3 and does not make any argument that the same should not apply to any of his other claims); ECF No. 44 at 4 (Respondents' position).) Therefore, the anticipatory default doctrine applies to claims Allen has not presented in state court, and the Court considers such claims to be technically exhausted but subject to the procedural default doctrine. *See Dickens*, 740 F.3d at 1317.

Turning to the procedural default doctrine, a federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested—or, in the case of a technically exhausted claim, would rest—on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730–31 (1991). The Court in *Coleman* described the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

To demonstrate cause for a procedural default, the petitioner must "show that some objective factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. at 488. For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to the question of prejudice, the petitioner bears "the burden of showing not merely that the errors [complained of] constituted a possibility of prejudice, but that they worked to his

actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989), (citing *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court held that ineffective assistance of counsel or lack of counsel in state post-conviction proceedings may serve as cause, to overcome the procedural default of a claim of ineffective assistance of trial counsel. To establish cause and prejudice under *Martinez*, the habeas petitioner must show: (1) the underlying claim of ineffective assistance of trial counsel must be "substantial"; (2) the procedural default must have been caused by state post-conviction counsel's ineffectiveness or the lack of counsel during the state post-conviction proceeding; (3) the post-conviction proceeding was the "initial" collateral review proceeding where the claim of ineffective assistance of trial counsel could have been brought; and (4) state law or its practical procedures required that the claim of ineffective assistance of trial counsel be raised in the initial post-conviction proceeding, rather than on direct appeal. *See Trevino v. Thaler*, 569 U.S. 416, 423, 429 (2013). The failure to satisfy any prong of the *Martinez* analysis means that the procedural default is not excused.

B.    AEDPA Standard of Review

28 U.S.C. § 2254(d), enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), sets forth the standard of review generally applicable to claims asserted and resolved on their merits in state court:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> //

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d)(1), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409). The analysis under section 2254(d) looks to the law that was clearly established by United States Supreme Court precedent at the time of the state court's decision. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has also instructed that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (AEDPA standard is "a difficult to meet and highly deferential standard

for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

C.    Ineffective Assistance of Counsel - Legal Principles

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for claims of ineffective assistance of counsel: the petitioner must demonstrate (1) that the attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. A court considering a claim of ineffective assistance of counsel must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In analyzing a claim of ineffective assistance of counsel under *Strickland*, a court may first consider either the question of deficient performance or the question of prejudice; if the petitioner fails to satisfy one element of the claim, the court need not consider the other. *See Strickland*, 466 U.S. at 697.

Where a state court previously adjudicated a claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05. In *Harrington*, the Supreme Court explained that, in such cases, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential ... and when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Cheney v. Washington*, 614 F.3d 987, 994–95 (2010) (double deference required with respect to state court adjudications of *Strickland* claims).

8

1

D.      Analysis of Claims

2

1.      Ground 1

3      In Ground 1, Allen claims that he "was convicted of all counts on

4  insufficient evidence in violation of the Fifth, Sixth and Fourteenth Amendments

5  to the United States Constitution." (ECF No. 22 at 5–7.) Allen claims:

6               … The evidence against Allen was based only on the testimony
         of [the victim, his mother, Pamela Powell]. Although the State called
7        Nichelle Carter (Powell's daughter) to testify that Allen was the
         person who committed crimes against Powell, Carter was not present
8        when the alleged incident occurred. Rather, she was on the phone
         with Powell. The State also called Officer John Bethard to testify Allen
9        was Powell's attacker, but he too was not present when the alleged
         incident took place. Therefore, Allen's conviction was based only on
10       the testimony of Powell.

11              Even though crime scene analyst Caitlan King responded to
         the scene, she collected no evidence for DNA testing, and she didn't
12       dust for fingerprints. Rather, she simply took Powell's word for it that
         Allen was the attacker. Furthermore, even though Powell said she
13       was attacked with a bat, no bat was ever recovered.

14              Thus, there was no independent evidence presented during
         Allen's trial to corroborate Powell's allegation that Allen was the
15       attacker.

16              Importantly, there was another possible suspect for the crime
         against Powell. Huey Peter Banks, Powell's fiancé, lived in the
17       apartment with her. Banks was at the apartment where Powell was
         attacked on the day she was attacked. Based on their relationship,
18       Powell had motive to protect Banks had he been the one to attack
         her. But there was no police investigation into Banks.
19
                Therefore, there was insufficient evidence, beyond a
20       reasonable doubt, to sustain the convictions against Allen.

21  (*Id.* at 5–6 (footnotes omitted); *see also* ECF No. 48 at 8-9.)

22      Allen asserted this claim on his direct appeal, and the Nevada Court of

23  Appeals denied relief on the claim, ruling as follows:

24              When reviewing a challenge to the sufficiency of the evidence,
         we review the evidence in the light most favorable to the prosecution
25       and determine whether "*any* rational trier of fact could have found
         the essential elements of the crime beyond a reasonable doubt."
26       *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Mitchell v. State*, 124
         Nev. 807, 816, 192 P.3d 721, 727 (2008). "[I]t is the function of the
27       jury, not the appellate court, to weigh the evidence and pass upon the
         credibility of the witness." *Walker v. State*, 91 Nev. 724, 726, 542
28       P.3d 438, 439 (1975). Circumstantial evidence is enough to support

9

a conviction. *Lisle v. State*, 113 Nev. 679, 691–92, 941 P.2d 459, 467–68 (1997), *holding limited on other grounds by Middleton v. State*, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998). Moreover, so long as the victim testifies with some particularity regarding the incident, the victim's testimony alone is sufficient to uphold a conviction. *Rose v. State*, 123 Nev. 194, 203, 163 P.3d 408, 414 (2007).

Here, the victim testified that Allen broke into her home through a window and beat her. The victim's daughter testified that she overheard glass breaking, her mother exclaim "no, Ronnie, no," and her mother screaming. A police officer and a detective testified that the victim identified Allen as her attacker immediately following the crime. The State also presented a portion of the victim's 911 call, wherein she identified Allen as her attacker, as well as other evidence of the victim's injuries and the crime scene.

The jury could reasonably infer from the evidence presented that Allen committed the charged crimes. *See*, NRS 205.067 (defining invasion of the home); NRS 205.060 (defining burglary); NRS 200.481 (defining battery); NRS 200.485 (defining battery constituting domestic violence) NRS 200.400 (addressing battery with intent to kill); NRS 33.018 (defining acts which constitute domestic violence). It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

(ECF No. 33-23 at 3–4 (emphasis in original).)

When federal courts "assess a sufficiency of evidence challenge in the case of a state prisoner seeking federal habeas corpus relief subject to the strictures of AEDPA, there is a double dose of deference that can rarely be surmounted." *Boyer v. Belleque*, 659 F.3d 957, 964 (9th Cir. 2011). First, the *Jackson* standard is deferential. *Id.* And second, the state court's determination of the sufficiency of the evidence claim is entitled to deference under 28 U.S.C. 2254(d). *Id.* at 964–65.

This Court determines that this claim is meritless. In this Court's view, the evidence against Allen was overwhelming; it certainly was not insufficient to support the convictions. The Nevada Court of Appeals' ruling on this claim was not contrary to, or an unreasonable application of, *Jackson*, or any other Supreme Court precedent. The Court will deny Allen habeas corpus relief on Ground 1.

1

2.      Ground 3

2

In Ground 3, Allen claims that his trial counsel "ineffectively failed to

3

investigate potential defense witnesses in violation of the Sixth and Fourteenth

4

Amendments to the United States Constitution." (ECF No. 22 at 9–10.) Allen's

5

claim in Ground 3 is, in its entirety, as follows:

6

7

8

9

10

11

12

13

14

> Trial counsel failed to investigate, locate and subpoena potential witnesses that could have provided testimony at Allen's trial which would have called into question the credibility of the State's main witness, Powell. Trial counsel was aware through police reports and discovery that there were witnesses (with no motive to help Allen) who made statements that were exculpatory for Allen and that were inconsistent with Powell's statements to police and her testimony. For example, a witness, Laurie Arnold, told police that she heard screaming and then saw a man leave Powell's apartment and get into a four door car. But Allen drove a two door car. The name and address of this witness was available to trial counsel, yet counsel failed to attempt to locate and interview this witness. This was ineffective assistance of counsel which deprived Allen of his right to a fair trial and due process. There is a reasonable probability the outcome of Allen's trial would have been different had his attorney investigated witnesses. Allen was prejudiced by his attorney's failure.

15

16

17

> Any contrary decision by a state court would be contrary to, or an unreasonable application of, clearly established federal law, and/or would involve an unreasonable determination of the facts. *See* 28 U.S.C. 2254(d)(1) and (2). The writ should be granted and the conviction and sentence should be vacated.

18

> This claim was presented to the Nevada Court of Appeals during postconviction proceedings.

19

(*Ibid.* (footnotes omitted); *see also* ECF No. 48 at 11–12.)

20

In his state habeas action, Allen asserted a similar claim, as Ground 2 of

21

his petition in that case, but in that claim in state court he did not identify the

22

one witness he identifies in Ground 3 in this case. The Nevada Court of Appeals

23

denied relief on the claim, ruling as follows:

24

25

26

27

28

> … Allen claimed trial counsel failed to investigate the crime charged, locate and subpoena certain witnesses, and present the witnesses' testimony. Allen's bare claim did not identify the witnesses, specify what the outcome of the investigation would have been, indicate what their testimony would have been, or explain how their testimony would have affected the outcome of the trial. We therefore conclude the district court did not err by denying this claim without first conducting an evidentiary hearing. *See Molina v. State*, 120 Nev. 185, 192, 87 P.3d 533, 538 (2004).

(ECF No. 34-10, p. 3.)

In the order resolving Respondents' motion to dismiss in this case, this Court stated the following about this claim:

> The obvious difference between Ground 3 in this case and Ground 2 of Allen's state petition is that in this case Allen identifies a witness whom he believes his trial counsel should have investigated. That difference "place[s] the claim in a significantly different posture than it was in the state courts." *See Nevius*, 852 F.2d at 470. Indeed, Allen's failure to identify any such witness in his state petition was the reason for the state courts' denial of relief on the claim. (*See* ECF No. 34-3, p. 4; ECF No. 34-10, p. 3.)

> Therefore, the Court determines that this claim, as now presented in Ground 3, was not exhausted in Allen's state habeas action. The claim is, however, technically exhausted but subject to the procedural default doctrine. (*See* ECF No. 43, p. 9 (Allen concedes that "[i]f this Court determines Allen has not presented the claim in Ground Three to the Nevada state courts, the claim is technically exhausted and procedurally defaulted").) Allen argues, though, that he can overcome the procedural default under *Martinez*. (*See id.* at 10–11.)

> The Court determines that the question whether Allen can overcome this procedural default under *Martinez* is intertwined with the merits of the claim, such that it will be better addressed after the parties brief the merits of the claim in Respondents' answer and Allen's reply. The Court will, therefore, deny Respondents' motion to dismiss with respect to this claim, without prejudice to Respondents asserting the procedural default defense to the claim—along with their arguments on the merits of the claim—in their answer.

(ECF No. 45 at 10; *see also* ECF No. 48 at 13–14 (Allen conceding that "[h]ere, the claim is technically exhausted because state procedural rules would bar consideration of the claim," and arguing that he can overcome the procedural default of the claim under *Martinez*).

There is no question that Allen can show cause for the procedural default of the claim in Ground 3, because he was not represented by counsel in his state habeas action. *See* ECF No. 47 at 11 (Respondents conceding that "Allen was not represented by counsel during his initial state post-conviction petition, so he established cause"). The determinative questions, though, are whether Allen shows prejudice—whether he was prejudiced by his trial counsel not investigating witness Laurie Arnold and by his not raising the claim in his state

habeas action—and whether his ineffective assistance of trial counsel claim is substantial within the meaning of *Martinez*. The Court determines that he does not make either showing.

> Arnold gave a voluntary statement to the police, in which she stated:
>
> Heard a lady screaming then a loud sound of glass breaking, saw black male walk to car & leave/car gold or tan 4 dr.

ECF No. 23-1. Allen claims Arnold's statement, and her testimony at trial, had it been obtained, were exculpatory because she said she saw the suspect get into a four-door car, whereas Allen drove a two-door car.

But Allen's claim remains undeveloped. While Allen does now identify a witness, he still does not "specify what the outcome of the investigation would have been, indicate what [Arnold's] testimony would have been, or explain how [Arnold's] testimony would have affected the outcome of the trial" (in the terms used by the Nevada Court of Appeals, *see* ECF No. 34-10 at 3). Allen cites only Arnold's 25-word statement to the police as support for his claim. Allen does not suggest that any investigation has yet been done regarding Arnold and her observations, or regarding how Arnold would have testified if called as a witness at Allen's trial. There is no showing of the circumstances surrounding Arnold's observations or, more specifically, her certainty with respect to whether the car in question had two or four doors. Allen's claim remains "bare," as the Nevada Court of Appeals put it.

Furthermore, the detail regarding whether the car Arnold saw had two or four doors is minor in the context of her statement to the police, and it is the only inconsistency between her statement and the evidence against Allen at trial. The screaming and the sound of glass breaking are consistent with testimony of Powell and her daughter, Nichelle Carter; Allen is a black male; Allen's car was described at trial as being in the range of gold, bronze, brown or tan. *See* ECF No. 31-4 at 113–20 (testimony of Powell); ECF No. 31-4 at 102–05 (testimony of

1    Carter); ECF No. 31-4 at 38–39 (testimony of Jessica Wert). Given that Arnold's

2    brief statement to the police was largely consistent with other evidence at trial,

3    the Court determines that Allen does not show any reasonable probability that a

4    jury would have acquitted him if they knew that Arnold described the car the

5    suspect left in as a four-door car rather than a two-door car.

6        Allen does not show prejudice to overcome the procedural default of this

7    claim of ineffective assistance of trial counsel, and the claim is insubstantial

8    within the meaning of *Martinez*. The Court will deny the claim in Ground 3 as

9    procedurally defaulted.

10            3.    Ground 4

11        In Ground 4, Allen claims that his appellate counsel "ineffectively failed to

12    challenge the jury instruction on implied malice in violation of the Sixth and

13    Fourteenth Amendments to the United States Constitution." (ECF No. 22 at 10–

14    13.) More specifically, Allen claims that his appellate counsel should have claimed

15    that it was error to include the definition of implied malice in the instruction on

16    malice, because the malice element of attempted murder requires proof of express

17    malice, rendering the implied malice definition inapplicable. (*See id.*)

18        Allen asserted this claim in his state habeas action, and the Nevada Court

19    of Appeals denied relief on the claim, ruling as follows:

20            ... Allen claimed appellate counsel was ineffective for failing to
            challenge the response given to the jury regarding malice and the
21        associated jury instruction. Allen was acquitted of the only charge
            for which malice was an element. Because Allen was acquitted of the
22        relevant charge, any claim regarding the malice jury instruction
            would have been futile. *See* NRS 178.598. We therefore conclude the
23        district court did not err by denying this claim without first
            conducting an evidentiary hearing.
24

25    (ECF No. 34-10 at 4.)

26        The series of instructions given to the jury that related to attempted murder

27    was as follows:

28    //

14

1
2
3

> Murder is the unlawful killing of a human being, with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned.

4

(*Id.* at 21 (Instruction No. 19).)

5
6
7
8
9

> Malice aforethought means the intentional doing of a wrongful act without legal cause or excuse or what the law considers adequate provocation. The condition of mind described as malice aforethought may arise, from anger, hatred, revenge or from particular ill will, spite or grudge toward the person killed. It may also arise from any unjustifiable or unlawful motive or purpose to injure another, proceeding from a heart fatally bent on mischief, or with reckless disregard of consequences and social duty.

10
11

> Malice aforethought does not imply deliberation or the lapse of any considerable time between the malicious intention to injure another and the actual execution of the intent but denotes an unlawful purpose and design as opposed to accident and mischance.

12

(*Id.* at 22 (Instruction No. 20).)

13
14

> Express malice is that deliberate intention unlawfully to take away the life of a human being, which is manifested by external circumstances capable of proof.

15
16

> Malice may be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

17

(*Id.* at 23 (Instruction No. 21).)

18
19
20

> Attempted Murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill.

21

(*Id.* at 24 (Instruction No. 22).)

22
23
24

> The intention to kill may be ascertained or deduced from the facts and circumstances of the killing, such as the use of a weapon calculated to produce death, the manner of its use, and the attendant circumstances characterizing the act.

25

(*Id.* at 25 (Instruction No. 23).)

26
27
28

> You are instructed that if you find the Defendant guilty of Attempt Murder, you must also determine whether or not the Defendant used a deadly weapon during the commission of the Attempt Murder.

1
2

If you find that the Defendant possessed a deadly weapon during the commission of the Attempt Murder, then you shall return the appropriate guilty verdict reflecting "With Use of a Deadly Weapon."

3
4
5

If you find that the State has failed to prove beyond a reasonable doubt that the Defendant committed Attempt Murder with Use of a Deadly Weapon, then you must find the Defendant not guilty of Attempt Murder with Use of a Deadly Weapon, but you may find him guilty of a lesser included offense.

6    (*Id.* at 26 (Instruction No. 24).)

7    During jury deliberations, the jury sent questions out to the court. On the

8    last day of the trial, just before receiving the jury's verdict, the court and the

9    parties made a record regarding those communications from the jury:

10
11

THE COURT: … All right. So before we bring the jury back for the verdict, I thought it was important that we go—make a record on what happened yesterday and—and today so far.

12
13
14

So yesterday afternoon, there was a question: Can you have malice aforethought without intent to kill? We all met. I think this one was on the phone. We—I was on the phone; you folks were here, I believe. And I think that everybody agreed that the answer to this question was: Yes, see Instruction No. 20.

15    Do we all agree to that?

16    MR. LEXIS [prosecutor]: Yes, Your Honor.

17    MS. BONAVENTURE [defense counsel]: Yes, Your Honor.

18    MR. HAUSER [defense counsel]: Yes, Your Honor.

19
20
21
22
23
24

THE COURT: Okay. And then subsequent to that, there was an indication from Curt that the jurors had told him that they were stuck, that they had reached a decision on one count, but that they were stuck on the rest. So we—I asked them to reduce that to writing. And the writing that we got says, We, the jury, are not in agreement on all charges. We are unanimous on Count I, guilty. Counts II through V, we are not able to come to any unanimous vote. Two jurors cannot come to vote unanimous. Any Counts II through V, we have tried for hours but are stuck. And then it's signed Juror 12, foreperson.

25
26
27

In response to that, contacted counsel, and we had a discussion about that. My suggestion was that we ask them: Did they believe that additional time would help to resolve additional charges? I know that the State objected to that. You wanted me to just send them back and tell them to keep working.

28

MR. LEXIS: That's correct, Your Honor, but since we have a verdict now, I think it's a moot point.

16

1

2           THE COURT: Okay. So the response that I gave them was, Do

3   you believe that additional time will help you resolve additional
    charges?

4           You guys were okay with that response, I think. The defense

5   was.

6           MS. BONAVENTURE: Yes, Your Honor.

7           MR. HAUSER: Yes, Your Honor.

8           THE COURT: Okay. I believe the—did we get another response
    back from that in writing?

9           MS. BONAVENTURE: We did. Or didn't they say no?

10          MR. HAUSER: I think we sent back the same note with our

11  response, and then they sent back no on the same piece of paper,
    but I'm not sure.

12          THE COURT: Yeah. It says, All 12 jurors state that additional

13  time will not change their minds in this case. Okay.

            So in response to that, I had Judge Barker come in and give

14  an *Allen* charge; right?

15          MS. BONAVENTURE: Yes, Your Honor.

16          MR. HAUSER: Yes, Your Honor.

17          THE COURT: Once he gave an *Allen* charge, we sent them back

18  to deliberate. That was, I believe, around 4:30. We had them
    deliberate till a little bit after 5:00, at which time we sent them home.

19  They have come back this morning. This morning we got one
    additional question from them which reads, Are express malice and

20  implied malice different concepts? If so, please explain the difference.

21          We got on the phone once about this. We discussed it. The
    State wanted to go back and do some additional research, and then

22  we got back on the phone again this morning and talked about it
    again. My response to the jury was, The Court is not at liberty to

23  supplement the record. See Instructions No. 21 and 22 which deal
    with—I think 21 dealt with express and implied malice being an issue

24  as it relates to the murder charge. And then 22 was the instruction
    that defined what attempt murder was, if I can—if I recall correctly.

25          And I know that the defense objected to this response. You

26  wanted me to explain—I think you wanted me to tell them that—that
    express—that you wanted me to eliminate the further—or the second

27  part of Instruction No. 21.

28          MR. HAUSER: Yes, Your Honor.

                                    17

THE COURT: In our second telephone conversation. The—first telephone conversation, you wanted me to leave it alone because you said it was an accurate statement of the law.

MR. HAUSER: Yes, Your Honor. When the State went back and did more research, so did we, which is why our answer changed in the meantime. And I can make a record on that whenever Your Honor is ready.

(ECF No. 32-6 at 4–7.) *See Farmer v. State*, 95 Nev. 849, 853, 603 P.2d 700, 703 (1979) (explaining that "[a]n *Allen* ... charge is an instruction to a deadlocked jury which contains an admonition that the case must at some time be decided or that minority jurors should reconsider their positions in light of the majority view" and stating that "[w]e have held, in reluctantly approving the *Allen* charge, that in order for such an instruction to be valid, it must clearly inform the jurors that each member has a duty to adhere to his own honest opinion and the charge must avoid 'creating the impression that there is anything improper, questionable or contrary to good conscience for a juror to create a mistrial'"). The court then allowed the parties to make a record of their arguments regarding its responses to the jury's questions, and, after that, received the jury's verdict. (*Id.* at 7–12.)

The jury found Allen not guilty of attempted murder, but guilty of the four other charged crimes: invasion of the home, burglary while in possession of a deadly weapon, battery with use of a deadly weapon resulting in substantial bodily harm constituting domestic violence, and battery with intent to kill constituting domestic violence. (*Id.* at 13–14.)

In their arguments about Instruction No. 21, defense counsel never mentioned any concern that the instruction would affect the jury's consideration of any charge other than attempted murder. (*See id.* at 7–12.)

Indeed, it was plain, from both the context and content of Instruction No. 21, that it concerned only the charge of attempted murder. As the Nevada Court of Appeals pointed out, the only charge against Allen on which malice was an element was attempted murder. (*See* ECF No. 32-5 at 12–31.)

//

Nevertheless, Allen argues:

> When the jury finally reached a verdict, Allen was found guilty of all charges except the attempted murder, count 3. However, it is not clear whether in their confusion, the jury applied the definition of implied malice to the intent element of other charges for which Allen was found guilty. Afterall, why would the definition of implied malice be in the jury instructions if it wasn't to be applied. And where jury instruction no. 2 states, "The order in which the instructions are given has no significance as to their relative importance," it stands to reason the jury may have inferred that implied malice applied to the intent element of the other charges since it explicitly does not apply to the attempted murder charge.

> Circumstances surrounding the jury's deliberation support the assertion that the jury applied the implied malice definition of intent to other charges. Prior to asking the court about the difference between implied and express malice, the jury had only come to a unanimous verdict on one count—invasion of a home—which does not list intent as one of the elements of the crime. Burglary and assault and battery, on the other hand, explicitly list that the intent to commit the crime is a necessary element of the charges. After asking the court to explain the difference between implied and express malice, and presumably reading the malice aforethought definition, the jury found Allen guilty of all charges except the one that required express malice—attempted murder. This was after the jury indicated it could only agree on one count—invasion of a home— which did not contain an intent requirement as one of the elements of the crime.

(ECF No. 22 at 11–12 (footnotes omitted).) The Court finds this argument to be meritless. The argument conflates malice and intent. Malice and intent are two different things, and, of the charges against Allen, only attempted murder had malice as an element. There was no mention of malice in any of the jury instructions explaining the charges of invasion of the home, burglary while in possession of a deadly weapon, battery with use of a deadly weapon resulting in substantial bodily harm constituting domestic violence, and battery with intent to kill constituting domestic violence. There simply is no evidence giving rise to any reason to believe that Instruction No. 21 had any influence on the jury's consideration of any of the charges on which Allen was convicted.

The Court finds reasonable the Nevada Court of Appeals' ruling that Allen was not prejudiced by his appellate attorney not making the claim that Instruction No. 21 was improperly given. The Nevada Court of Appeals' ruling was

not contrary to, or an unreasonable application of, *Strickland*, or *Douglas v. California*, 372 U.S. 353 (1963) (holding that criminal defendants have a right to counsel for a first appeal), or any other Supreme Court precedent. The Court will deny Allen habeas corpus relief on Ground 4.

### 4.    Ground 5

In Ground 5, Allen claims that his appellate counsel "ineffectively failed to challenge the notice requirement for a testifying witness in violation of the Sixth and Fourteenth Amendments to the United States Constitution." (ECF No. 22 at 13–14.) Here, Allen claims that he received inadequate notice disclosing Nichelle Carter as a witness, that the prosecution was allowed to call Carter to testify over his objection, and that his appellate counsel provided ineffective assistance of counsel in not raising the issue on appeal. (*Ibid.*)

Allen asserted this claim in his state habeas action, and the Nevada Court of Appeals denied relief on the claim, ruling as follows:

> ... Allen claimed appellate counsel was ineffective for failing to argue that the State violated the notice requirement for witness Nichelle Carter. NRS 174.234(1)(a) requires parties to file written notice of lay witnesses not less than five judicial days before the start of trial. The State filed a supplemental notice of witnesses on February 24, 2017, and Allen's trial began on March 6, 2017, at least five judicial days later. Because the State provided notice of its intent to call the witness in accord with NRS 174.234(1)(a), any claim regarding the notice requirements would have been futile. We therefore conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 34-10 at 4.)

The notice disclosing Carter as a witness was timely, but Allen objected to the notice because it did not provide Carter's address. (*See* ECF No. 29-16 (the notice); ECF No. 31-4 at 90–98 (the objection).) The trial court interpreted the operative statute, NRS 174.234, as requiring notice of a witness's last known address and found that the prosecution did not know Carter's address when the notice was given, but only learned of her whereabouts shortly before the trial commenced. (*Ibid.*) The trial court allowed defense counsel to speak with Carter

1    for ten minutes prior to her testimony. (*Ibid.*) The Nevada Court of Appeals ruled

2    that under the circumstances, NRS 174.234 was satisfied.

3        The Nevada Court of Appeals' construction of NRS 174.234 and its ruling

4    that the prosecution complied with that statute are matters of state law, within

5    the purview of the state court and not subject to review by this federal habeas

6    court. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

7        Therefore, Allen's appellate counsel did not perform deficiently by not

8    asserting a claim concerning the notice disclosing Carter as a witness, and Allen

9    was not prejudiced by his appellate counsel not doing so. Allen does not show

10   the Nevada Court of Appeals' ruling on this claim to be contrary to, or an

11   unreasonable application of, *Strickland*, *Douglas*, or any other Supreme Court

12   precedent. The Court will deny Allen relief on Ground 5.

13       D.    Certificate of Appealability

14       For a certificate of appealability ("COA") to issue, a habeas petitioner must

15   make a "substantial showing of the denial of a constitutional right." 28 U.S.C.

16   §2253(c). Where the district court denies a habeas claim on the merits, the

17   petitioner "must demonstrate that reasonable jurists would find the district

18   court's assessment of the constitutional claims debatable or wrong." *Slack v.

19   McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas

20   petition on procedural grounds without reaching the prisoner's underlying

21   constitutional claim, a COA should issue when the prisoner shows, at least, that

22   jurists of reason would find it debatable whether the petition states a valid claim

23   of the denial of a constitutional right and that jurists of reason would find it

24   debatable whether the district court was correct in its procedural ruling." *Ibid.*;

25   *see also James v. Giles*, 221 F.3d 1074, 1077–79 (9th Cir. 2000). Applying these

26   standards, the Court finds that a certificate of appealability is unwarranted in

27   this case.

28   //

IV.    CONCLUSION

It is therefore ordered that Petitioner's Second Amended Petition for Writ of Habeas Corpus (ECF No. 22) is denied.

It is further ordered that Petitioner is denied a certificate of appealability.

It is further ordered that the Clerk of the Court is directed to enter judgment accordingly and close this case.

It is further ordered that, pursuant to Federal Rule of Civil Procedure 25(d), Nethanjah Breitenbach is substituted for William Reubart as the respondent warden. The Clerk of the Court is directed to update the docket to reflect this change.

Dated this 10th day of January 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE